SEAN K. KENNEDY (Bar No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
YOUNG J. KIM (Bar No. 264195)
Deputy Federal Public Defender
(E Mail: Young_Kim@fd.org)
KOREN L. BELL (Bar No. 268614)
Deputy Federal Public Defender
(E-mail: Koren_Bell@fd.org)
3801 University Avenue, Suite 700
Riverside, California  92501
Telephone (951) 276-6346
Facsimile (951) 276-6368

Attorneys for Defendant
KAWAUM MARQUEZ SCOTT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KAWAUM MARQUEZ SCOTT,<br><br>Defendant. | Case No. ED CR 13-116-VAP<br><br>**NOTICE OF MOTION; MOTION TO SEVER MR. SCOTT'S TRIAL FROM THAT OF CO-DEFENDANT NEKEYIA NECOLE WEATHERSPOON; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing Date:  May 19, 2014**<br>**Hearing Time: 10:00 a.m.** |

TO: UNITED STATES ATTORNEY ANDRÉ BIROTTE, JR. AND ASSISTANT UNITED STATES ATTORNEY THOMAS D. STOUT:

PLEASE TAKE NOTICE that on May 19, 2014 at 10:00 a.m., or as soon thereafter as counsel may be heard, defendant Kawaum Marquez Scott will make the following motion:

1

# **MOTION**

Defendant Kawaum Marquez Scott, by and through his counsel of record, Deputy Federal Public Defenders Koren L. Bell and Young J. Kim, hereby moves this Honorable Court for an order severing his trial from the trial of co-defendant Nekeyia Necole Weatherspoon.

This motion is based on Rule 14 (a) of the Federal Rules of Criminal Procedure, the Sixth Amendment to the United States Constitution, the attached Memorandum of Points and Authorities, all files and records in this case, and any further evidence as may be adduced at the hearing on this motion.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: April 28, 2014     By */S/ Young J. Kim*
                             YOUNG J. KIM
                             Deputy Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

On November 27, 2013, the government charged Kawaum Marquez Scott and Nekeyia Necole Weatherspoon in a six-count Indictment with sex trafficking of a child and conspiracy to engage in sex trafficking of a child. Trial is scheduled for May 27, 2014. According to the discovery, Ms. Weatherspoon gave several statements to law enforcement which implicate Mr. Scott.

The Court should sever Mr. Scott's trial from Ms. Weatherspoon's trial because the two defendants' defenses are antagonistic and mutually exclusive, and the use of Ms. Weatherspoon's statements at a joint trial would infringe on Mr. Scott's Sixth Amendment right to confrontation.

## II.

## STATEMENT OF FACTS

On November 14, 2013, Nekeyia Weatherspoon and Kawaum Marquez Scott were arrested by agents of the Federal Bureau of Investigation ("FBI") pursuant to an arrest warrant issued in this case. FBI 302, dated 11/25/13 attached as Exhibit A. Ms. Weatherspoon was interviewed by the FBI on that date. Id. During that interview, Ms. Weatherspoon made several statements that implicate Mr. Scott. Attached as Exhibit B are excerpts of a video recording of Ms. Weatherspoon's interview with the FBI.

Specifically, Special Agent Jeff Stiff of the FBI questioned Ms. Weatherspoon about who received the proceeds from the prostitution of the victim in this case. At time stamp 14:22:40 of Exhibit B, Agent Stiff asked Ms. Weatherspoon, "does Kawaum come and take the money?" Ms. Weatherspoon responded, "I give it to him." Id. Later in the interview, Agent Stiff inquired about ads for prostitution of the victim posted on the website "Backpage.com." At time stamp 14:28:52 of Exhibit B, Agent

Stiff asked Ms. Weatherspoon, "did you ever post [victim]?" Ms. Weatherspoon responded: "I never posted [victim]." Id. Agent Stiff followed up with the question, "[Kawaum] posted through his laptop?" Id. Ms. Weatherspoon responded, "yes". Id.

On April 24, 2014, defense counsel for Ms. Weatherspoon filed a Notice of Intent to Call Expert at Trial. See Dkt. 58. Ms. Weatherspoon's notice states that her proposed expert, Nancy Kaser-Boyd, Ph.D., A.B.A.P., will testify regarding "the components and an explanation of the 'battered women's syndrome;' her examination and conclusions concerning her examination of [Ms. Weatherspoon;] and whether or not [Ms. Weatherspoon] was suffering under the 'battered woman's syndrome' at the time of her commission of the offenses herein and to such other matters which relate thereto. Id.

## III.

## ARGUMENT

Rule 14 of the Federal Rules of Criminal Procedure provides as follows:

> (a) Relief. If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant . . . the court may . . . sever the defendants' trials, or provide any other relief that justice requires.
>
> (b) Defendant's Statements. Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence.

Fed. R. Crim. P. 14 (2002). Although the decision to grant or deny a request for severance is left to the sound discretion of trial courts, severance is mandated under Rule 14(a) when "there is a serious risk that a joint trial would prejudice a specific trial right of one of the

4

defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

## A. The Court Should Sever the Defendants' Trials Because their Defenses are Mutually Exclusive

The trials should be severed because, as set forth in the in camera pleading filed separately, there is a serious risk that a joint trial would prevent the jury from making a reliable judgment about Mr. Scott's guilt or innocence. While "mere inconsistency in defense positions is insufficient" to warrant severance, "antagonistic" defenses will justify a severance. United States v. Tootick, 952 F.2d 1078, 1081 (9th Cir. 1991). A jury may be prevented from making a reliable judgment "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. . . Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant might also present a risk of prejudice." Zafiro, 506 U.S. at 539.

Respecting the prejudice that can arise from forcing a joint trial where defendants will pursue antagonistic and mutually exclusive defenses, the Ninth Circuit has reasoned as follows:

> Defendants who accuse each other bring the effect of a second prosecutor into the case with respect to their codefendant. In order to zealously represent his client, each codefendant's counsel must do everything possible to convict the other defendant. The existence of this extra prosecutor is particularly troublesome because the defense counsel are not always held to the limitations and standards imposed on the government prosecutor. Opening statements . . . can become a forum in which gruesome and outlandish tales are told about the exclusive guilt of the 'other' defendant. . . . Counsel can make and

>oppose motions that are favorable to their defendant, without objection by the government.
>
>Cross-examination of the government's witnesses becomes an opportunity to emphasize the exclusive guilt of the other defendant or to help rehabilitate a witness that has been impeached. Cross-examination of the defendant's witnesses provides further opportunities for impeachment and the ability to undermine the defendant's case. The presentation of the codefendant's case becomes a separate forum in which the defendant is accused and tried. Closing arguments allow a final opening for codefendant's counsel to portray the other defendant as the sole perpetrator of the crime.

Id. at 1082. Accordingly, the Ninth Circuit has held that where the defendants' defenses are "mutually exclusive," the trial court should sever the trials. See United States v. Mayfield, 189 F.3d 895, 900 (9th Cir. 1999) (reversing conviction on appeal due to district court's failure to sever trials where mutually exclusive defenses were presented); see also United States v. Odom, 888 F.2d 1014, 1018 (4th Cir. 1989) (finding severance proper where defendant's counsel continuously attacked codefendant and discussed his prior bad acts).

In this case, the defense of Mr. Scott will be mutually exclusive with the defense of Ms. Weatherspoon. As set forth in the accompanying in camera pleading, their respective defense strategies set the stage for the "extra prosecutor" that the law forbids. See Tootick, 952 F.2d at 1082. Further, as detailed in the accompanying in camera pleading, and as evidenced by Ms. Weatherspoon's expert notice, see Dkt. 58, Ms. Weatherspoon's anticipated defense strategy will present the jury with evidence -- namely, whether or not [Ms. Weatherspoon] was suffering under the 'battered woman's syndrome' at the time of her commission of the offenses herein and to such other

matters which relate thereto -- "that would not be admissible if [Mr. Scott] were tried alone." See Zafiro, 506 U.S. at 539. For the reasons set forth in the in camera pleading, his evidence would not only be irrelevant in a trial of Mr. Scott, standing alone, but is anticipated to be highly prejudicial to Mr. Scott, undermining his right to a fair trial. For these reasons, the Court should sever Mr. Scott's trial from Ms. Weatherspoon's.

**B.     The Court Should Sever the Defendants' Trials Because there is a Serious Risk that a Joint Trial would Prejudice Mr. Scott's Sixth Amendment Right to Confrontation**

The Court should also sever Mr. Scott's trial from Ms. Weatherspoon's trial because, based on statements made to government agents by Ms. Weatherspoon post-arrest and in other fora, there is a serious risk that a joint trial would prejudice Mr. Scott's Sixth Amendment right to confrontation. "The right to cross-examine one's accusers is fundamental in our system of justice. Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." United States v. Marsh, 144 F.3d 1229, 1240 (9th Cir.1998). Confrontation Clause violations can require a court to sever trials. See United States v. Gillam, 167 F.3d 1273, 1276-77 (9th Cir.1999).

The serious risk that a joint trial would prejudice Mr. Scott's right to confrontation arises should the government use any of Ms. Weatherspoon's statements, which implicate Mr. Scott, at trial, and should Ms. Weatherspoon exercise her privilege against self-incrimination and choose not to testify at trial. At a minimum, through Ms. Weatherspoon's post-arrest statements to Agent Stiff, she "was pointing an accusatory finger at" Mr. Scott. See United States v. Peterson, 140 F.3d 819, 822 (9th Cir.1998). Not only will it "not [be] difficult for the jury to determine that that person was the other defendant on trial," id. at 822; here, it will be clear.

7

The Advisory Committee Notes to the 1966 amendment to Rule 14 specifically recognize the possibility of prejudice and the need for a severance in this situation:

> A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or conversation made by that co-defendant. The prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice.

Advisory Committee Notes, Fed. R. Crim. P. 14, 1966 Amendment.

In Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), the United States Supreme Court held that admission of a non-testifying defendant's confession that implicated another defendant in a joint trial violated the other defendant's Sixth Amendment right to confrontation. In so holding, the Court rejected the argument that a limiting instruction could cure the violation.[1] The Court reasoned:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial . . . . It was against such threats to a fair trial that the Confrontation Clause was directed.

Id. Thus, the Confrontation Clause bars the use of a non-testifying co-defendant's extrajudicial statement which incriminates the defendant and which is not otherwise admissible against the defendant. Id. at 126. Accordingly, if the government intends to use any of Ms. Weatherspoon' statements as evidence against Mr. Scott, the Court must sever his trial from her trial. At the least, the Court should issue an order

8

precluding the government from introducing Ms. Weatherspoon's statements at a joint trial with Mr. Scott.

## IV.

## **CONCLUSION**

For the foregoing reasons, Mr. Scott respectfully requests the Court to order that his trial be severed from the trial of co-defendant Ms. Weatherspoon.  At the least, the Court should issue an order precluding the government from introducing Ms. Weatherspoon's statements at a joint trial.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED:  April 28, 2014        By  */S/ Young J. Kim*
                              YOUNG J. KIM
                              Deputy Federal Public Defender