ANDRÉ BIROTTE JR.
United States Attorney
JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Branch Office
THOMAS D. STOUT (Cal. Bar No. 241348)
Assistant United States Attorney
     3403 10th Street, Suite 200
     Riverside, California 92501
     Telephone:  (951) 276-6938
     Facsimile:  (951) 276-6202
     Email:      thomas.stout@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| UNITED STATES OF AMERICA, | No. ED CR 13-116-VAP |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT KAWAUM MARQUEZ SCOTT</u> |
| v. | |
| KAWAUM MARQUEZ SCOTT, et al., | Sentencing Date: July 21, 2014 |
| Defendants. | Sentencing Time:  9:00 a.m. |

Pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure and the Court's order, plaintiff United States of America hereby submits its position regarding the sentencing of defendant KAWAUM MARQUEZ SCOTT ("defendant Scott").

//
//
//
//
//
//

This statement is based on the attached memorandum of points and authorities, the Presentence Report prepared by the United States Probation Office, and the files and records in this case.

Dated: June 30, 2014          Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Branch Office

              /s/
THOMAS D. STOUT
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

For the reasons set forth below, the government recommends a sentence of 210 months' imprisonment to be followed by a ten-year term of supervised release.

## I. FACTUAL BACKGROUND

In August 2012, the child victim and her mother moved to an apartment in Perris, California at a property where defendant Nekeyia Necole Weatherspoon ("defendant Weatherspoon") lived. (PSR ¶ 11.) Defendant Scott was defendant Weatherspoon's boyfriend. (PSR ¶¶ 11, 69.) At that time, the child victim was fourteen years old. (Id.)

Soon after the child victim and her mother moved in, defendant Weatherspoon began recruiting the child victim to work as a prostitute. Defendant Weatherspoon told the child victim that she could make a lot of money doing "dates," (see PSR ¶ 11), and that dates did not necessarily require having sex with the men she met. (See Ex. 1 at 8.) In October 2012, defendant Weatherspoon took the child victim on her first "date" in Woodland Hills, California. The child victim was required to perform oral sex on a man for $60, which defendant Weatherspoon collected from her. (PSR ¶ 12; Ex. 1 at 8-9.)

On October 27, 2012, defendants Scott and Weatherspoon went to the child victim's apartment and told her to pack a bag and come with them to Hemet, California. Defendant Scott rented a room at the Diamond Inn motel. (PSR ¶ 13.) Defendant Weatherspoon took several sexually suggestive pictures of the child victim which defendant Scott used to create advertisements for the commercial sexual services of the child victim that he posted to the website

1

1  "www.Backpage.com." (PSR ¶ 13.)  Defendant Scott posted a new
2  advertisement every day from October 27, 2012, through October 31,
3  2012.  (See Ex. 2.)  Defendants Scott and Weatherspoon arranged for
4  customers who responded to the ads to meet the child victim at the
5  Diamond Inn for sex.  Before the meeting, defendant Scott gave the
6  child victim a condom, told her how much to charge, told her to
7  perform any sexual act the customer wanted except for anal sex, and
8  to tell the customers that she was 18 years old.  (PSR ¶ 13.)  The
9  defendants remained in Hemet with the child victim until October 31,
10 2012, changing motels once.  Throughout this time, the child victim
11 continued to perform sex acts on customers.  (PSR ¶ 13-16.)  The
12 child victim always gave the money she was paid to the defendants.
13 (Id.)

14   On November 9 and 17, 2012,[1] defendant Weatherspoon arranged
15 for the child victim to go on "car dates," in which the child victim
16 was to meet customers in their cars in public places to have sex.
17 (PSR ¶ 17-18.)  After the second car date, defendant Weatherspoon
18 offered to let the child victim keep the money the customer had paid
19 her.  Defendant Scott, however, later came to the child victim's
20 home to retrieve that money and took it from her by force.  (Id.
21 ¶ 18-19.)

22   On December 19, 2012,[2] defendant Weatherspoon picked the child
23 victim up from her high school.  Defendant Weatherspoon again took
24 sexually suggestive photographs of the child victim, which defendant

---

26  [1] The PSR incorrectly lists one of these dates as November 8, 2012.
27
   [2] The child victim turned fifteen years old between the November
28 19, 2012 incident and December 19, 2012.

2

Scott again used to advertise the child victim's commercial sexual services. (PSR ¶ 20.) The defendants arranged for the child victim to have two more car dates, then drove her back to Hemet to meet additional customers for sex at the Diamond Inn and the Motel 6. (PSR ¶ 20.) During this time, defendant Scott made threats against her and her family. (See Ex. 3 at 2.)

During both trips to Hemet, defendants provided the child victim with drugs and alcohol. (See id. at 4.)

On November 27, 2013, a grand jury in the Central District of California returned a six-count indictment charging defendant Scott with one count of conspiracy to engage in sex trafficking of a child in violation of 18 U.S.C. § 1594(c) (Count One) and three counts of sex trafficking of a child in violation of 18 U.S.C. §§ 1591(a)(1) and (2) (Counts 3, 5, 6).

On May 5, 2014, defendant Scott signed a binding plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and on May 6, 2014, defendant Scott appeared before this Court and pled guilty to Counts 3 and 5 of the indictment.

## II. THE PRESENTENCE REPORT

### A. OFFENSE LEVEL

The Probation Office found that defendant's total offense level is 36, based on a base offense level of 30 (U.S.S.G. § 2G1.3(a)(2)), a two-level increase for exercising undue influence over the child victim (U.S.S.G. § 2G1.3(b)(2)(B)), a two-level increase for an offense involving a sex act (U.S.S.G. § 2G1.3(b)(4)(A)), a five-level increase for a pattern of activity involving prohibited sexual conduct (U.S.S.G. § 4B1.5(b)), and a three-level decrease for

acceptance of responsibility (U.S.S.G. §§ 3E1.1(a), (b)).[3]  (PSR ¶¶ 34-46.)  Although the government concurs that the base offense level is 30 and that a five-level increase for a pattern of activity involving prohibited sexual conduct applies, the government objects to the Probation Office's calculation of the total offense level.

Consistent with the binding plea agreement, the government does not believe two-level enhancements for exercising undue influence over the child victim or for an offense involving a sex act apply under the facts of this case.

Also in accordance with the binding plea agreement, the government believes a two-level enhancement for acting as an organizer, leader, manager, or supervisor under U.S.S.G. § 3B1.1(c) applies.  (Plea Agreement ¶ 17.)  The Court may impose such an enhancement "if there is evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime."  United States v. Whitney, 673 F.3d 965, 975 (9th Cir. 2012).  As an initial matter, defendant has admitted to this role in the offense.  (See Plea Agreement ¶ 17.)  Furthermore, as set forth below, defendant played an organizing role in the offense.  On the one occasion in which defendant Weatherspoon attempted to allow the child victim to keep the money she was paid, defendant Scott overruled her and took the money by force.  Defendant Scott organized the motel rooms they used to conduct prostitution activities, was responsible for creating the advertisements they

---

[3] The government hereby moves for the additional one-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

4

1  used to further their prostitution activities, and instructed the
2  child victim as to what to say to customers and what sexual acts to
3  perform.  Accordingly, a two-level enhancement is appropriate.
4      **B.   CRIMINAL HISTORY**
5      The Probation Office calculated defendant's criminal history
6  category as III, based on six criminal history points.  (PSR ¶¶ 48–
7  56.)  The government objects to this calculation of defendant's
8  criminal history category.  The Probation Office assigned only one
9  criminal history point to defendant's 2012 conviction for taking a
10 vehicle without owner's consent.  (PSR ¶ 53.)  Defendant, however,
11 received a sentence of 180 days' imprisonment for this conviction.
12 (Ex. 4 at 4.)  Accordingly, defendant should receive two criminal
13 history points for this conviction, see U.S.S.G. § 4A1.1(b),
14 resulting in a criminal history score of seven and a criminal
15 history category of IV.
16     With an offense level of 34 and a criminal history category of
17 IV, the government maintains that defendant's applicable advisory
18 guidelines sentencing range is 210–262 months.
19 **III. THE GOVERNMENT'S SENTENCING POSITION**
20     The government's recommended sentence is sufficient, but not
21 greater than necessary, to achieve the purposes set forth in 18
22 U.S.C. § 3553(a).
23     The nature and circumstances of the offense, as well as its
24 seriousness, support a 210-month sentence.  Defendant Scott
25 knowingly sold a child to adult men for sex.  He did so repeatedly
26 and without regard for her safety or well-being.  He provided her
27 with drugs and alcohol while she worked for him.  He threatened the
28 child victim and and her family, and at one point used force to

retrieve money from her that he perceived to be his. These factors weigh heavily in favor of imposition of a significant sentence.

The need for general deterrence also supports a 210-month sentence. Cases of this nature are difficult to prosecute, as victims of sex trafficking are often fearful of turning to law enforcement due to their own criminal conduct. Even if law enforcement is alerted to their situation, victims are often reluctant to testify against their pimps. Given the severity of the crime — particularly when it involves minor trafficking victims — and the difficulty of prosecutions, it is crucial that defendants who are caught and convicted receive significant sentences to deter others from becoming involved in human trafficking, particularly in sex trafficking of children.

## IV. CONCLUSION

For the foregoing reasons, the government believes that the recommended sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

The government respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.