STEPHANIE YONEKURA
Acting United States Attorney
JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Branch Office
THOMAS D. STOUT (Cal. Bar No. 241348)
Assistant United States Attorney
     3403 10th Street, Suite 200
     Riverside, California 92501
     Telephone:  (951) 276-6938
     Facsimile:  (951) 276-6202
     Email:      thomas.stout@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| UNITED STATES OF AMERICA, | No. ED CR 13-116-VAP |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT NEKEYIA NECOLE WEATHERSPOON |
| v. | |
| KAWAUM MARQUEZ SCOTT, et al., | Sentencing Date: September 8, 2014 |
| Defendants. | Sentencing Time: 9:00 a.m. |

Pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure and the Court's order, plaintiff United States of America hereby submits its position regarding the sentencing of defendant NEKEYIA NECOLE WEATHERSPOON ("defendant Weatherspoon").

//

//

//

//

//

//

This statement is based on the attached memorandum of points and authorities, the attached exhibits, the Presentence Report prepared by the United States Probation Office, and the files and records in this case.

Dated: August 18, 2014           Respectfully submitted,

                                 STEPHANIE YONEKURA
                                 Acting United States Attorney

                                 JOSEPH B. WIDMAN
                                 Assistant United States Attorney
                                 Chief, Riverside Branch Office


                                         /s/
                                 _____
                                 THOMAS D. STOUT
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

For the reasons set forth below, the government recommends a sentence of 150 months' imprisonment to be followed by a ten-year term of supervised release.

## I. FACTUAL BACKGROUND

In August 2012, the child victim and her mother moved to an apartment in Perris, California at a property where defendant Nekeyia Necole Weatherspoon ("defendant Weatherspoon") lived. (PSR ¶ 9.)  Defendant Weatherspoon was defendant Kawaum Marquez Scott's ("defendant Scott") boyfriend.  (PSR ¶¶ 11, 28.)  At that time, the child victim was fourteen years old.  (PSR ¶ 9.)

Soon after the child victim and her mother moved in, defendant Weatherspoon began recruiting the child victim to work as a prostitute.  Defendant Weatherspoon befriended the child victim, smoked marijuana with her, and offered her advice about her life.  (PSR ¶ 9; Ex. 1 at 7-8.)  Defendant Weatherspoon told the child victim that she could make a lot of money doing "dates," and that dates did not necessarily require having sex with the men she met.  (See PSR ¶ 9; Ex. 1 at 8.)

In October 2012, defendant Weatherspoon took the child victim on her first "date" in Woodland Hills, California.  Defendant Scott did not participate in this date.  The child victim was required to perform oral sex on a man for $60, which defendant Weatherspoon collected from her.  (PSR ¶ 10; Ex. 1 at 8-9.)

On October 27, 2012, defendants Scott and Weatherspoon went to the child victim's apartment and told her to pack a bag and come with them to Hemet, California.  Defendant Scott rented a room at the Diamond Inn motel.  (PSR ¶ 11.)  Defendant Weatherspoon took

1

several sexually suggestive pictures of the child victim which defendant Scott used to create advertisements for the commercial sexual services of the child victim that he posted to the website "www.Backpage.com." (Id.)  Defendant Scott posted a new advertisement every day from October 27, 2012, through October 31, 2012.  (See Ex. 2.)  Defendants Scott and Weatherspoon arranged for customers who responded to the ads to meet the child victim at the Diamond Inn for sex.  Before the meeting, defendant Scott gave the child victim a condom, told her how much to charge, told her to perform any sexual act the customer wanted except for anal sex, and to tell the customers that she was 18 years old.  (PSR ¶ 11.)  The defendants remained in Hemet with the child victim until October 31, 2012, changing motels once.  Throughout this time, the child victim continued to perform sex acts on customers.  (Id. ¶¶ 11-14.)  The child victim always gave the money she was paid to the defendants.  (Id.)

On November 9 and 17, 2012, defendant Weatherspoon arranged for the child victim to go on "car dates," in which the child victim was to meet customers in their cars in public places to have sex.  (Id. ¶¶ 15-17.)  Defendant Scott did not participate in these dates.  After the second car date, defendant Weatherspoon offered to let the child victim keep the money the customer had paid her.  Defendant Scott, however, later came to the child victim's home to retrieve that money and took it from her by force, implying that he had not been aware of the dates on which Weatherspoon had been taking the child victim.  (Id. ¶¶ 16-17.)

On December 19, 2012,[1] defendant Weatherspoon picked the child victim up from her high school. Defendant Weatherspoon again took sexually suggestive photographs of the child victim, which defendant Scott again used to advertise the child victim's commercial sexual services. (Id. ¶ 18.) The defendants arranged for the child victim to have two more car dates, then drove her back to Hemet to meet additional customers for sex at the Diamond Inn and the Motel 6. (Id. ¶¶ 18, 20.)

During both trips to Hemet, defendants provided the child victim with drugs and alcohol. (See Ex. 3 at 4.)

On November 27, 2013, a grand jury in the Central District of California returned a six-count indictment charging defendant Weatherspoon with one count of conspiracy to engage in sex trafficking of a child in violation of 18 U.S.C. § 1594(c) (Count One) and five counts of sex trafficking of a child in violation of 18 U.S.C. §§ 1591(a) (Counts 2, 3, 4, 5, 6).

On May 1, 2014, defendant Weatherspoon signed a binding plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and on May 6, 2014, defendant Weatherspoon appeared before this Court and pled guilty to Count 1 of the indictment.

**II.   THE PLEA AGREEMENT**

In the plea agreement, defendant Weatherspoon agreed to plead guilty to Count 1 of the indictment, charging her with conspiring to engage in sex trafficking of a child, which has no mandatory minimum sentence. The government agreed to dismiss the remaining five

---

[1] The child victim turned fifteen years old between the November 19, 2012 incident and December 19, 2012.

counts, which all charged defendant Weatherspoon with sex trafficking of a child in violation of 18 U.S.C. § 1591(a), all of which were accompanied by mandatory minimum sentences of ten or fifteen years.  The parties agreed to the following Guidelines calculations:

| Sentencing Guidelines Factor | Offense Levels | Applicable Guideline |
|---|---|---|
| Base offense level | 30 | U.S.S.G. § 2G1.3(a)(2) |
| Pattern of activity | +5 | U.S.S.G. § 4B1.5(b)(1) |
| Acceptance of responsibility | -3 | U.S.S.G. §§ 3E1.1(a), (b) |
| **Total offense level:** | 32 | |

The parties also agreed that defendant Weatherspoon's criminal history category was III, and that her applicable Guidelines range was 151–188 months' imprisonment.  (Weatherspoon Plea Agreement ¶ 13.)  Finally, the parties agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that defendant Weatherspoon receive a sentence between 84 months' and 168 months' imprisonment, a ten-year term of supervised release with certain agreed-upon conditions, and that defendant Weatherspoon pay full restitution to the child victim.  (Id. ¶ 14.)

**III. THE PRESENTENCE REPORT**

    **A.   OFFENSE LEVEL**

The Probation Office found that defendant's total offense level is 30, based on a base offense level of 24 (U.S.S.G. § 2G1.3(a)(4)), a two-level increase for exercising undue influence over the child victim (U.S.S.G. § 2G1.3(b)(2)(B)), a two-level increase for an offense involving a sex act (U.S.S.G. § 2G1.3(b)(4)(B)), a five-level increase for a pattern of activity involving prohibited sexual

conduct (U.S.S.G. § 4B1.5(b)), and a three-level decrease for acceptance of responsibility (U.S.S.G. §§ 3E1.1(a), (b)).[2]  (PSR ¶¶ 33-46.)  The government objects to the Probation Office's calculation of the total offense level.

Consistent with the binding plea agreement, the government does not believe two-level enhancements for exercising undue influence over the child victim or for an offense involving a sex act apply under the facts of this case.

Disregarding the parties' agreement to apply a base offense level of 30 under U.S.S.G. § 2G1.3(a)(2), the Probation Office maintains that the base offense level is 24 because defendant Weatherspoon's count of conviction is 18 U.S.C. § 1594(c), rather than 18 U.S.C. §§ 1591(a), (b)(1) or (b)(2), even though defendant Weatherspoon admitted in substance that the object of the conspiracy was to traffic a victim under 18 years of age.  (PSR ¶ 33.)  The Court should reject this narrow reading of section 2G1.3(a).[3]  The offense level applied to a substantive offense is also applied to a conspiracy to commit that substantive offense in a variety of contexts, including civil rights,[4] fraud,[5] and drug trafficking.[6]

---

[2] The government hereby moves for the additional one-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

[3] Indeed, the Probation Office itself has not previously adopted this reading of Section 2G1.3.  In United States v. Bell, et al., ED CR 12-57-VAP, several defendants pled guilty to 18 U.S.C. § 1594(c).  The Probation Office nevertheless applied a base offense level of 30 under Section 2G1.3(a)(2) to those defendants.  (See, e.g., Bell, Docket Nos. 170 at 2; 231 at 8.)

[4] See 18 U.S.C. § 241; U.S.S.G. App. A (referencing conspiracy to violate civil rights conviction to same guideline as deprivation of rights).

There is no reason to believe the Sentencing Commission intended to carve out an exception to this general rule in the context of child sex trafficking or for the Court to create such an exception to the general rule.  Conspiring to engage in sex trafficking is no less serious an offense than sex trafficking itself, and should be treated similarly under the Guidelines.

Applying a base offense level of 30 under U.S.S.G. § 2G1.3(a)(2), a five-level enhancement under U.S.S.G. 4B1.5(b) for a pattern of activity involving prohibited sexual conduct, and a three-level reduction for acceptance of responsibility results in a total offense level of 32.  The government maintains the Court should apply this total offense level.

Even if the Court were to adopt the Probation Office's current reading of Section 2G1.3, there are factors in this case that support an upward departure from the guidelines range resulting from that calculation.  As discussed above, defendant Weatherspoon induced the child victim into prostitution through fraud, namely by falsely telling her that going on "dates" did not require the child victim to engage in sex with men for money.  Accordingly, defendant Weatherspoon could have been convicted under 18 U.S.C. § 1591(b)(1), which would have resulted in a 15-year mandatory minimum and a base offense level of 34.  U.S.S.G. § 2G1.3(a)(1).  Alternatively, under the facts admitted in the plea agreement, defendant could have been

---

[5] See 18 U.S.C. § 1349; U.S.S.G. App. A (referencing conspiracy to commit mail, wire, or bank fraud to Section 2X1.1, which in turn incorporates the guideline for the substantive offense).

[6] See 21 U.S.C. § 846; U.S.S.G. App. A (referencing conspiracy to distribute drugs to substantive guidelines applicable to drug trafficking).

convicted under 18 U.S.C. § 1591(b)(2), which would have resulted in a ten-year mandatory minimum and the base offense level described above. The Guidelines calculation and sentencing recommendation of the Probation Office do not capture the seriousness of defendant Weatherspoon's crime.

### B.   CRIMINAL HISTORY

The Probation Office calculated defendant Weatherspoon's criminal history category as III, based on four criminal history points. (PSR ¶¶ 48-53.) The government concurs in the probation office's calculation of defendant Weatherspoon's criminal history.

With an offense level of 32 and a criminal history category of IV, the government maintains that defendant's applicable advisory guidelines sentencing range is 151-188 months.

## IV.   THE GOVERNMENT'S SENTENCING POSITION

The government's recommended sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

The nature and circumstances of the offense, as well as its seriousness, support a 150-month sentence. Defendant Weatherspoon recruited the child victim into a life of commercial sex trafficking. She did so after befriending the child victim and taking advantage of her trust. Defendant Weatherspoon knowingly sold a child to adult men for sex. She did so repeatedly and without regard for the child's safety or well-being. Defendant Weatherspoon took the child victim on her first date without Defendant Scott, and later took the child victim on two additional dates without defendant Scott's knowledge, direction, or approval.

These factors weigh heavily in favor of imposition of a significant sentence.

    The need for general deterrence also supports a 150-month sentence. Cases of this nature are difficult to prosecute, as victims of sex trafficking are often fearful of turning to law enforcement due to their own criminal conduct. Even if law enforcement is alerted to their situation, victims are often reluctant to testify against their traffickers. Given the severity of the crime — particularly when it involves minor trafficking victims — and the difficulty of prosecutions, it is crucial that defendants who are caught and convicted receive significant sentences to deter others from becoming involved in human trafficking, particularly in sex trafficking of children.

    Finally, the need to avoid unwarranted sentencing disparity supports a 150-month sentence. Defendant Scott has already received a 210-month sentence in this matter,[7] corresponding to the low-end of the applicable Guidelines range as calculated by the parties in defendant Scott's binding plea agreement.[8] A 150-month sentence for defendant Weatherspoon accounts for her lower criminal history category and any lesser role she played in the offense, as it omits the two-level role enhancement to which the parties stipulated with

---

[7] Although the Probation Office now maintains that defendant Weatherspoon is less culpable than defendant Scott, at the time of defendant Scott's sentencing, the Probation Office objected to the imposition of a two-level supervisory role enhancement for defendant Scott on the grounds that both defendants were equally culpable.

[8] Both the Probation Office and the Court disagreed with the parties' Guidelines calculations for defendant Scott and imposed the additional two-level enhancements for undue influence and commercial sex acts, and declined to apply a two-level supervisory role enhancement.

respect to defendant Scott.[9]  Given her significant involvement in the conspiracy to traffic the child victim — including taking the child victim on three dates without defendant Scott, at least two of which were likely done without his knowledge — a sentence shorter than 150 months for defendant Weatherspoon would represent an undue sentencing disparity with defendant Scott.

**V.   CONCLUSION**

For the foregoing reasons, the government believes that the recommended sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

The government respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

---

[9] Even if the Court were to apply an additional two-level minor role reduction under U.S.S.G. § 3B1.2(b), defendant Weatherspoon's resulting offense level would be 30 under the parties' stipulated offense level or 28 under the Probation Office's calculations, resulting in Guidelines ranges of 121–151 months or 97–121 months, respectively.  To bring defendant Weatherspoon's Guidelines range in line with the Probation Office's Guidelines calculations and recommendation of 84 months' imprisonment, defendant Weatherspoon would have to receive a four-level minimal role adjustment under 3B1.2(a), which is not justified in light of her extensive — and often independent — involvement in this very serious offense.